UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

GERGELY SOMOGYI, *individually and on behalf of all* :
*others similarly situated*,                      :
                                        :

                    Plaintiff,        :        MEMORANDUM AND
                                        :        ORDER

       -against-                     :

                                        :        21-CV-6845 (DG)(MMH)

                                        :

ORGANOGENESIS HOLDINGS INC., GARY S.        :
GILLHEENEY, SR., and DAVID C. FRANCISCO,        :

                                        :

                    Defendants.       :

                                        :

--------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Gergely Somogyi ("Plaintiff" or "Somogyi"), on behalf of himself and all others similarly situated who purchased Organogenesis Holdings Inc. ("Organogenesis" or "the Company") securities between March 17, 2021 and October 11, 2021, brings this action against Defendants Organogenesis, Gary S. Gillheeney, Sr., and David C. Francisco, alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* (the "PSLRA"). (*See generally* Compl., ECF No. 1.)[1]

Five movants initially sought appointment as lead plaintiff and of their respective attorneys as lead counsel, pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA. Four of the five movants have filed notices of their non-opposition. Before the Court is the remaining motion of Donald Martin Meyer ("Meyer" or "the Movant") for appointment as lead plaintiff and for appointment of his counsel, Kessler Topaz Meltzer & Check,

---

[1] All citations to documents filed on ECF refer to the ECF document number and pagination "___ of ___" unless otherwise indicated.

1

LLP ("Kessler Topaz"), as lead counsel.  (Meyer Mot., ECF No. 7.)  For the reasons set forth below, Meyer's motion is **granted** and the remaining motions are **denied as moot**.

## I.     BACKGROUND

### A.  Factual Allegations

As alleged, Organogenesis is a regenerative medicine company that develops, manufactures, and commercializes solutions for the advanced wound care and surgical and sports medicine markets in the United States, including two products—"Affinity" and "PuraPly XT"—at issue here.  (Compl. ¶¶ 2, 18.)  Gillheeney serves as President, Chief Executive Officer, and a Director of the Company, while Francisco is Organogenesis's Chief Financial Officer.  (*Id.* ¶¶ 13, 14.)

According to the Complaint, between March 16, 2021 and October 16, 2021, the Company issued press releases and filed regulatory reports with the U.S. Securities and Exchange Commission ("SEC") containing materially false and misleading statements about the revenue and profits from its advanced wound care and surgical and sports medicine products.  (*See id.* ¶¶ 19–41.)  The press releases announced Organogenesis's financial results for fourth quarter 2020 and first and second quarters 2021.  (*Id.* ¶¶ 19–22, 28–30, 35–37.)  The Company's related quarterly and annual SEC reports included signed certifications in which Gilheeney and Francisco certified that the reports complied with the applicable provisions of the Exchange Act.  (*Id.* ¶¶ 23–26, 32–34, 38–41.)  In sum, Plaintiff alleges that these various statements failed to disclose that:

> "(i) Organogenesis improperly billed the federal government for its Affinity and PuraPly XT products by, among other things, setting the price for those products multiple times higher than similar products; (ii) the Company improperly induced doctors to use its Affinity and PuraPly XT products through lucrative reimbursements; (iii) as a result of all the foregoing, the Company's revenue and profits derived from its Affinity and PuraPly XT products were at least in substantial part unsustainable; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times."

(*Id.* ¶ 42.)

On October 12, 2021, an anonymous report (the "VIC Report") was published on Value Investors Club, an online website with investors as its target audience. (*Id.* ¶¶ 4, 43.) The VIC Report allegedly revealed that the Company had engaged in wholesale price manipulation by charging the Centers for Medicare & Medicaid Services ("CMS") an "exorbitantly high" price for Affinity, which Medicare reimbursed, while also offering the product to doctors through substantial rebates. (*Id.* ¶¶ 43-45.) When this practice became profitable, the Company also allegedly employed a similar tactic for its new PuraPly XT products, resulting in billing the federal government $250 million annually. (*Id.* ¶¶ 46–47.) As a result of these practices, the VIC report suggested that the Company lost sales and profits and may be the subject of government investigation. (*Id.* ¶ 47.) Plaintiff alleges that these revelations caused a precipitous drop in the Company's stock price, causing significant losses and damages to Plaintiff, as well as other members of the putative class. (*Id.* ¶¶ 48–49.)

**B. Procedural Background**

Somogyi filed the Complaint on December 10, 2021, seeking to recover compensable damages caused by Defendants' alleged violations of the federal securities laws under the Exchange Act. (*See generally* Compl., ECF No. 1.) Notice of the pending class action was posted on *Globe Newswire* on December 10, 2021. (Jarvis Decl., Ex. D, ECF No. 9-4.) Thereafter, on February 8, 2022, five purported class members moved for appointment as lead plaintiff and for their counsel to be appointed as lead Plainitff's counsel in this action: (1) Meyer with counsel Kessler Topaz (Meyer Mot., ECF No. 7); (2) Brandon Bates with counsel The Rosen Law Firm, P.A. (Bates Mot. ECF No. 10); (3) Mark Fredrick Dalessi with counsel Levi & Korsinsky, LLP (Dalessi Mot., ECF No. 12); (4) Craig Adams with counsel Pomerantz LLP and Holzer & Holzer,

LLC (Adams Mot., ECF No. 14) and (5) Richard J. Ganem with counsel Block & Leviton LLP (Ganem Mot., ECF No. 16).

Subsequently, on February 22, 2022, four movants expressed non-opposition to Martin's application because they did not appear to have the largest financial interested in this litigation within the meaning of the PSLRA.  (*See* Adams Not., ECF No. 19; Ganem Not., ECF No. 20; Dalessi Not., ECF No. 21; Bates Not., ECF No. 22.)  Thereafter, only Meyer's motion remained pending for decision.  On the same date, Meyer filed a memorandum in further support of his motion for appointment as lead plaintiff.  (Meyer's 2d Mem., ECF No. 23.)  Meyer also filed a reply in further support of his application, confirming that his application was the only one still pending.  (Meyer's Reply, ECF No. 24.)

## II.   DISCUSSION

### A.  Appointment of Lead Plaintiff

The PSLRA requires that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" in securities class actions.   15 U.S.C. § 78u-4(a)(3)(B)(i).  Congress, in enacting the PSLRA, sought to "prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar Holding Co. Ltd.*, No. 11-CV-7133 (JPO), 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (quotations omitted).  "Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff." *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018).

In determining which individual or group is best suited to serve as lead plaintiff, courts adopt a two-step inquiry. *Darish v. N. Dynasty Mins. Ltd.*, Nos. 20-CV-5917 (ENV)(RLM) & 20-CV-6126 (ENV)(RLM), 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 111–12 (E.D.N.Y. 2012). First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that "(aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Second, if the court is satisfied that there is a presumptively adequate lead plaintiff, the court may then determine whether this presumption of adequacy has been rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

1. Notice and Timely Filing

Under the PSLRA, a plaintiff who files a securities class action must publish:

> in a widely circulated business-oriented publication or wire service, a notice advising members of the purported class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i). Even though none of the parties have objected to the adequacy of the notice in this case, "in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice

comports with the objectives of the PSLRA." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886 (LDH)(SJB), 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898 (SAS), 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005)).

The Court finds that the notice meets the PSLRA's requirements.  The notice was filed on December 10, 2021 in *Globe Newswire*.  (Jarvis Decl., Ex. D, ECF No. 9-4 at 2–4.)  The notice summarizes the allegations in the Complaint, defines the relevant class period, and advises any potential lead plaintiffs to "ask the Court to appoint [them] as Lead Plaintiff for the Class" by February 8, 2022.  (*Id.*)  "[T]he filing of a press release through *Globe Newswire* is an appropriate means of satisfying the PSLRA's notice requirement."  *Parot v. Clarivate Plc*, No. 22-CV-1371 (ARR)(RLM), 2022 WL 1568735, at *3 (E.D.N.Y. May 18, 2022); *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-CV-8122 (VSB), 2019 WL 6873807, at *4 (S.D.N.Y. Dec. 17, 2019).  Further, the Movant filed the instant motion on February 8, 2022 by the relevant deadline.  15 U.S.C. § 78u-4(a)(3)(A)(i); *Chitturi*, 2020 WL 8225336, at *3.

Accordingly, the Court finds that publication of the notice is sufficient, and that the Movant's application is timely.

2. Largest Financial Interest

The second requirement to support the most adequate plaintiff presumption is whether the movant "in the determination of the court, has the largest financial interest in the relief sought by the class[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  While the PSLRA does not delineate the factors courts must consider when assessing whether a movant has the largest financial interest, courts in this circuit generally look to:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words,

> the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Yang v. Trust for Advised Portfolios,* No. 21-CV-1047 (FB)(MMH), 2022 WL 970772, at *3 (E.D.N.Y. Mar. 31, 2022); *In re Gentiva Sec. Litig.*, 281 F.R.D. at 112 (quoting *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010)).  The most important of these factors, however, is the fourth factor—"the approximate loss suffered by the movant." *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

As the sole remaining movant, Meyer alleges that he purchased approximately 4,300 shares of Organogenesis shares and suffered losses of approximately $36,121 during the relevant time period as a result of Defendants' misrepresentations and/or omissions.  (Jarvis Decl., Ex. B, ECF No. 9-2 at 2–3.)[2]  The Movant also states that, "[b]ased on the movants' respective submissions to the Court," he has incurred the most significant losses during the relevant class period in connection with Organogenesis transactions.  (Meyer 2d Mem., ECF No. 23 at 7; *see also* Ganem Not., ECF No. 20 at 2 ("[A]fter a careful review of the competing motions for lead plaintiff, Mr. Ganem has determined that Donald Martin Meyer appears to have the largest financial interest in

---

[2] The Movant calculates losses based on the "last in, first out" ("LIFO") methodology.  (*See* Meyer Mem., ECF No. 8 at 8; Meyer 2d Mem., ECF No. 23 at 4-5 & n.2.)  LIFO "calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale. The alternative, 'first in, first out', assumes that the first stocks to be sold are the stocks that were acquired first." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011).  While the Second Circuit has not opined on the preferred methodology to determine the largest financial interest under the PSLRA, "the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses." *Marquez v. Bright Health Grp., Inc.*, No. 22-CV-101 (AMD)(RLM), 2022 WL 1314812, at *5 (E.D.N.Y. Apr. 26, 2022) (collecting cases).  The Court also adopts the LIFO methodology in this case, where "[n]o party disputes that the [LIFO] methodology should be used to measure losses." *Foley*, 272 F.R.D. at 129.

the relief sought by the class[.]").)  Such assertions of financial loss are sufficient to appoint a movant as lead plaintiff at this stage when the motion is unopposed and no other plaintiff demonstrates a larger financial stake.  *See Yang*, 2022 WL 970772, at *2–3.

Accordingly, the Court finds that Movant has the largest financial interest in the litigation of any putative lead plaintiff.

3.  Rule 23 Requirements

The Court must also determine whether the Movant "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Darish*, 2021 WL 1026567 at *6.  "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied."  *Yang*, 2022 WL 970772, at *3 (quoting *Chitturi*, 2020 WL 8225336, at *5); *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 30 (E.D.N.Y. 2019) (noting a requirement of "only . . . a preliminary showing of typicality and adequacy at this stage of the litigation") (internal quotations omitted).

a.  *Typicality*

"Lead plaintiffs' claims are typical where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20 CIV. 4420 (PAE), 2020 WL 5548856, at *5 (S.D.N.Y. Sept. 16, 2020) (internal quotations omitted).  Meyer satisfies this requirement because he alleges, like all members of the putative class, that he purchased the Company's shares during the proposed class period and that Defendants' material misstatements and omissions caused the share price to decline sharply, financially damaging him and other investors.  (Meyer Mem., ECF No. 8 at 9; Meyer 2d Mem., ECF No. 23 at 8.)  "That 'is all that is required to

8

demonstrate typicality at this stage.'" *In re Hebron Tech. Co.*, 2020 WL 5548856, at \*5 (quoting

*In re Petrobas Sec. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015)).

> b. *Adequacy*

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced

and generally able to conduct the litigation; (2) the class members' interests are not antagonistic

to one another; and (3) the [proposed lead plaintiff] and class [have] a sufficient interest in the

outcome of the case to ensure vigorous advocacy.'" *Yang*, 2022 WL 970772, at \*4 (quoting

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT)(RER),

2011 WL 3511057, at \*4 (E.D.N.Y. May 31, 2011), *report and recommendation adopted*, No. 10-

CV-864 (SLT)(RER), 2011 WL 3511045 (E.D.N.Y. Aug. 10, 2011)).

The Movant also satisfies the adequacy requirement. First, the Movant's selected counsel,

Kessler Topaz, has demonstrated that it is qualified and has substantial experience litigating

securities fraud cases as lead counsel. (*See* Jarvis Decl., Ex. E, ECF No. 9-5 (listing multiple cases

in which Kessler Topaz was appointed lead counsel in securities fraud litigations).)

Second, there is no indication that Meyer has interests that are antagonistic to other

potential class members. (*See* Meyer Mem., ECF No. 8 at 10.) As discussed above, Movant's

interests are clearly aligned with the interests of the class, as he purchased the Company's shares

during the class period, like all putative class members. (Meyer 2d Mem., ECF No. 23 at 8.) Thus,

there is no factual basis to conclude that his interests are antagonistic to the other class members.

*See In re Hebron Tech. Co.*, 2020 WL 5548856, at \*6.

Third, the Movant has indicated his willingness to vigorously advocate on behalf of the

members of the putative class. (*See* Jarvis Decl., Ex. C, ECF No. 9-3 ¶¶ 7–8.) Meyer is a

sophisticated investor who, after sustaining significant financial losses, considered his duties as

lead plaintiff and is willing to accept them.  (*Id.* ¶¶ 2, 7–8.)  Because he has the largest financial stake in the outcome of this litigation, he will be motivated to vigorously pursue recovery on behalf of all class members.  *Atanasio*, 331 F.R.D. at 30.

Therefore, because Meyer satisfies the PSLRA Rule 23 requirements, he is entitled to the PSLRA presumption as the most adequate lead plaintiff.  *Id.*

4.   Rebuttal of the Presumption

The presumption in favor of the most adequate plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff— (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see Emerson v. Mut. Fund Series Tr.*, No. 17-CV-2565 (ADS)(GRB), 2018 WL 10667922, at *1 (E.D.N.Y. Jan. 8, 2018).  No other purported class member has offered proof that Meyer does not meet the PSLRA Rule 23 requirements of typicality and adequacy. Additionally, no other member of the purported class currently opposes Meyer's motion, as the other movants filed notices of non-opposition to his application.  (*See* Adams Not., ECF No. 19; Ganem Not., ECF No. 20; Dalessi Not., ECF No. 21; Bates Not., ECF No. 22.)

In sum, Meyer has satisfied all three prongs of the PSLRA's presumptive requirements for co-lead plaintiffs and no other purported class members have rebutted the presumption. Accordingly, the Court appoints Meyer as lead plaintiff.  *See Emerson*, 2018 WL 10667922, at *1; 15 U.S.C. § 78u-4(a)(3)(B).

**B.  Approval of Lead Counsel**

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  "The

lead plaintiff's right to select and retain counsel is not absolute." *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, No. CV-08-1418 (LDW)(ETB), 2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (citations omitted). However, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 211 (E.D.N.Y. 2019); *see also Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 352 (E.D.N.Y. 2018) ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (internal quotations omitted). "In assessing a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience." *Darish*, 2021 WL 1026567, at *8; *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) ("When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience."); *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (approving lead counsel selection where the firm had "extensive experience in prosecuting securities fraud actions.").

Movant argues that Kessler Topaz "is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its capability to conduct complex securities class action litigation in an efficient, effective, and professional manner." (Meyer Mem., ECF No. 8 at 10–11.) In support of the application, the Movant includes his chosen counsel's detailed resume describing the firm's experience with securities class actions. (*See* Jarvis Decl., Ex. E, ECF No. 9-5). Kessler Topaz has also been appointed as lead or co-lead plaintiff in several other actions in this circuit. *See, e.g.*, *In re Paysafe Ltd.*, No. 21-CV-10611-ER-KHP, 2022 WL 1471122, at *8 (S.D.N.Y. May 10, 2022); *Lundy v. Ideanomics, Inc.*, No. 20 CIV. 4944 (GBD),

11

2020 WL 7389027, at *4 (S.D.N.Y. Dec. 16, 2020); *Hansen v. Ferrellgas Partners, L.P.*, Nos. 16-CV-7840 (RJS), 16-CV-8850 (RJS), & 16-CV-9294 (RJS), 2017 WL 281742, at *6 (S.D.N.Y. Jan. 19, 2017); *see also Foley*, 272 F.R.D. at 134.  Accordingly, the Court is satisfied that Kessler Topaz is qualified to "protect the interests of the class" and appoints the firm as lead counsel. *Rauch*, 378 F. Supp. 3d at 211.

**III.**     **CONCLUSION**

Based on the foregoing, Donald Martin Meyer's motion for appointment as lead plaintiff at ECF No. 7 is **granted.**  The Court appoints Meyer as lead plaintiff and Kessler Topaz Meltzer & Check, LLP as lead plaintiff's counsel.  The motions to appoint lead plaintiff at ECF Nos. 10, 12, 14 and 16 are **denied as moot**.

Brooklyn, New York
August 25, 2022

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge