UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

GERGELY SOMOGYI, individually and on Behalf of All Others Similarly Situated, et al,

          Plaintiffs,

v.

ORGANOGENESIS HOLDINGS INC., et al,

          Defendants.

Case No. 1:21-cv-06845-DG-MMH

Brooklyn, New York
January 27, 2023

TRANSCRIPT OF PRE-MOTION CONFERENCE HEARING
BEFORE THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiffs:          Nathan A Hasiuk, Esq.
          Sharan Nirmul, Esq.
          Austin Manning, Esq.
          Kessler Topaz Meltzer Check, LLP
          280 King Of Prussia Rd.
          Radnor, PA 19087

For the Defendants:          Matthew C. Baltay, Esq.
          Rachel L. Kerner, Esq.
          Allen M. Thigpen, Esq.
          Foley Hoag
          155 Seaport Blvd.
          Boston, MA 02210

Clerk:          K.A.

Court Recorder:          Electronic Sound Recording

Transcription Service:          Chris Hwang
          Abba Reporting
          PO Box 223282
          Chantilly, Virginia  20153
          (518) 302-6772

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Call to order)

THE CLERK:  Civil cause for pre-motion conference in docket number 21-CV-6845, Somogyi v. Organogenesis Holdings, Inc., et al.

Before asking the parties to state their appearances, I would like to note the following.

Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings.

Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court.

Counsel, please state your appearances for the record, starting with the Plaintiffs?

MR. HASIUK:  Good morning, this is Nathan Hasiuk with Kessler Topaz Meltzer and Check on behalf of lead Plaintiff Donald Martin Meyer and additional Plaintiffs Manishkumar Bhagat and Dustin Lineweber.  I'm joined by Austin Manning and Sharan Nirmul also of Kessler Topaz.

Good morning, Your Honor.

THE COURT:  Good morning to you all.

MR. BALTAY:  Good morning, Your Honor, on behalf of the Defendant Organogenesis Holdings, Gary Gilheeney, and David Francisco, this is Matthew Baltay from Foley Hoag Law firm.

And I am joined by my colleagues also from Foley Hoag, Allen Thigpen and Rachel Kerner.  Good morning.

THE COURT:  Good morning.  Your sound quality, Mr. Baltay, is not great.  I don't know if you're on a cell phone or maybe you can move closer to your microphone.

MR. BALTAY:  Thank you, Your Honor.  I'm in a conference room on a line that ordinarily works.  We will try immediately (indiscernible).

THE COURT:  No, whatever you just did was better. Maybe you moved, but that's better.  You're clearer now.

MR. BALTAY:  Thank you, Your Honor.

THE COURT:  Thank you.  Thank you.  We're convened today for a pre-motion conference regarding Defendant's anticipated motion to dismiss.

And I have obviously, you know, received and I carefully reviewed the parties' letters.  But I'd like to just begin by asking if Defendants want to respond to any of the points or arguments that were made by Plaintiffs in their submission?

MR. BALTAY:  Yes, Your Honor, thank you.  We do not believe that the Plaintiffs have in their responsive three-page letter really addressed the -- our key positions.

And very briefly, the case got started with a anonymous short seller report that really fabricated the case. Plaintiff has since stepped away from that and attempts now to

really reverse engineer a case theory.

We think we set forth quite articulately in our opening letter the key deficiencies.  And those key deficiencies are failure to allege an actionable misstatement.

And particularly under the governing pleading standards, Plaintiffs must specifically allege why the alleged misstatements are misleading.

And their responsive letter quotes again alleged misrepresentations, but we do not believe they in their amended complaint or responsive letter really countered our key points, which are none of the alleged misstatements are that, alleged misstatements.

They dig into the revenue growth attributable in part to the two products, Affinity and PuraPly XT.  The revenue was good.  There's been no misstatement.  It's revenue that was in fact paid.

They take issue with alleged misstatements that the growth was driven by those products.  It was by the efficacy and demand for those products.  It was.  There's no allegation that as to why those allegations are inaccurate or misleading.

On scienter, and of course we're under the PSLRA, which that's a very high pleading standard.  And the reason Congress set the high pleading standard was to block the well-known practice of plaintiffs filing suit any time a stock price drops and seeking to reverse engineer a theory.

We're talking here about securities fraud.  It's one of the most serious allegations that can be made against a company.

And Congress is very clear that you must allege scienter very compellingly.  The allegations must be cogent and at least as compelling as any opposing inference.

Here, we don't think in Plaintiff's responsive letter and certainly not in their amended complaint that they allege scienter.

To allege scienter, they must allege that individuals had a state of mind to defraud.  If there is no mosaic theory, there is no organizational theory, they must allege the individuals in fact knew of the lies.  And those are the CEO Gary Gilheeney and the CFO Dave Francisco.

And we submit there's zero allegations in the amended complaint that those two individuals knew of any of this alleged scheme.

And in fact, the complaint itself says that the top-down policy was not to engage in any scheme to market a spread.

And we submit and we will establish in our motion to dismiss papers in detail that there's simply no allegation that can be credited that the two individuals, the CEO and CFO, knew of any alleged fraud.  We think that ends the case.

On top of that, the Plaintiffs then pivot to a theory of insider sales as establishing the scienter instead of an

allegation of actual knowledge.

But there are serious problems with that attempt to substitute in scienter.  First is the sales were done only by one of two Defendants.  That undercuts scienter.  They were made pursuant to a pre-established ND 51 plan.  And most importantly, Plaintiffs failed to allege that the sales were suspicious in timing or amount.

On timing, the sales were four and five weeks on the key allegations after any alleged misstatement, which the case law from this Court says that does not give rise to the strong inference.

And on amount, the Plaintiffs failed to allege suspicious amount in terms of failure to allege the key metric of profit.

So we allege and we will establish, Your Honor, in the motion to dismiss that this is exactly the type of case that Congress in the PSLRA directed should be dismissed at the outset on the motion to dismiss.

THE COURT:  Thank you.

MR. BALTAY:  That's our --

THE COURT:  Okay, let me turn to Plaintiff's counsel, Mr. Hasiuk, for any response?

MR. HASIUK:  Thank you, Your Honor.  I'm actually going to turn it over to my colleague, Ms. Manning, to address the points that were raised by Mr. Baltay.

THE COURT:  Sure, go ahead, Ms. Manning.

MS. MANNING:  Good morning, Your Honor.  As previewed in our January 6 pre-motion conference letter response, the amended complaint easily meets the requirements to survive Defendant's motion to dismiss.

As alleged, Defendants made 66 statements over the course of 9 fiscal quarters, which were false or misleading because they attributed the company's revenue growth to differentiated product features and strategic launches in the office channel, among other reasons.

When in fact, Defendants were inflating their revenues through the company's undisclosed Medicare reimbursement scheme throughout the class period.

The points made by Mr. Baltay ignore that he does not address the cause of the revenues.  This ignores the amended complaint's actual allegations, which are based on Defendant's false statements, which attribute the growth in Affinity and XT sales to reasons other than Defendant's undisclosed Medicare scheme, which was used to inflate XT and Affinity sales.

With respect to scienter, that's a holistic inquiry and you must consider all the facts as alleged collectively and these give rise to a strong inference of scienter.

Here, the amended complaint adequately alleges that Defendants were involved in a concerted scheme to inflate the company's revenue and stock price.

As alleged, Organogenesis management directed and trained its employees to market the reimbursement spread for Affinity and XT.  And when those employees refused, they retaliated against them.

The SE accounts in the amended complaint establish that the reimbursement scheme was a top-down concerted effort by Organogenesis management and Defendants promoted the scheme by training their sales representatives to market the reimbursement spread and provide the company sales representatives with branded iPads to use in physician offices.

The amended complaint's former employees are corroborated across geographic areas, as well as the stratas in the company from management down to the sales reps.

This was also corroborated through our investigation with documents obtained through FOIA, which support the strong inference of a company-wide culture that Defendants were inflating their revenues through their Medicare reimbursement scheme.

With respect to Defendant Gilheeney scienter, he also personally profited from the fraud by selling over $16,000,000 worth of Organogenesis stock at inflated prices.

Both of -- all of his sales were suspicious in timing.  They were done in close proximity to false statements and corrective disclosures, as well as sufficient in amount.

He sold as much as 54 percent of his current holdings

despite never having sold these stocks previously.

With respect to Defendant's point that we did not -- that we only pled his total profits -- excuse me, his total proceeds, we did include his total profits, which amounted to just under $15,000,000.

For these reasons, we think that Defendant's motion to dismiss will be futile, but we'll address their additional arguments in the briefing.

THE COURT:  Okay, thank you.  That's helpful.  It's helpful for me to hear from the parties in addition to what you've put in your submission.

So I am going to give the parties two weeks to consult with each other and to put in a joint letter proposing a briefing schedule for Defendant's motion to dismiss.

I prefer where possible to allow the parties to try to -- to agree on a schedule, which you know, if it's reasonable, you know, I'm likely to accept, but you know, I would like you in the first instance to join the proposed ones.

So I'll look out for a letter from the parties jointly by February 10th proposing a briefing schedule on a motion to dismiss.

MR. HASIUK:  Your Honor, sorry, go ahead.

MR. BALTAY:  Thank you, Your Honor.

MS. MANNING:  This is Austin Manning for the Plaintiffs.  We have conferred with Defendants and they've

proposed a 45/45/30 day briefing schedule.

And while we think 45 days is generous, given that they've had the complaint since October, we do agree to this schedule.  And Plaintiffs would propose that the Court set the schedule from the date of today's conference.

THE COURT:  Well, let me ask you then, just put in a letter by the end of today with your proposed proposal.

MR. BALTAY:  Your Honor, we will submit a letter jointly with the Plaintiffs setting forth the proposed schedule.  Thank you.

THE COURT:  Okay, thank you all.  We are adjourned.

MS. MANNING:  Thank you, Your Honor.

MR. BALTAY:  Thank you, Your Honor.

(Proceedings concluded)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          January 31, 2023
Chris Hwang                         Date
Court Reporter